# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Tigercat International Inc. and Tigercat Industries Corp., | Case No. _____ |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| Caterpillar Inc., | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs Tigercat International Inc. and Tigercat Industries Corp. (collectively, "Tigercat"), by its attorneys, DLA Piper LLP (US), bring this action for declaratory relief against defendant Caterpillar Inc. ("Caterpillar"), and by and for their Complaint (the "Complaint") allege as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement and non-dilution, arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the trademark laws of the United States, 15 U.S.C. § 1051, *et seq*. By this action, Tigercat seeks to resolve an actual, immediate, and substantial controversy with Caterpillar and to eliminate any doubt that Tigercat's ongoing use of its TIGERCAT trademark does not infringe, dilute, or otherwise violate any of Caterpillar's trademark rights.

## THE PARTIES

2. Tigercat International Inc. is a Canadian corporation with its principal place of business at P.O. Box. 637, 54 Morton Avenue, East, Brantford, Ontario N3T5P9, Canada. Tigercat is a world-recognized leader in the design, development, manufacture, and distribution

of premium quality forestry equipment and specialized off-road industrial equipment. Tigercat International Inc., and its subsidiaries and affiliates, has built a valuable, well-known, and trusted brand, by marketing its premium quality forestry equipment and off-road industrial equipment under its TIGERCAT trademark to customers in the United States, Canada, and in many other countries around the world.

3. Tigercat Industries Corp. is a Delaware corporation with its principal place of business at 1001 Highway 29, Ailey, Georgia, 30410. Tigercat Industries Corp. does business in the United States under the TIGERCAT trademark and is a wholly-owned subsidiary of Tigercat Industries Inc., which in turn is wholly owned by Tigercat International Inc.

4. Upon information and belief, Caterpillar is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 N.E. Adams Street, Peoria, Illinois 61629-9240. Upon information and belief, Caterpillar is a multi-national company engaged in the development, manufacture, distribution, advertising, and sale of a wide variety of machinery, equipment, vehicles, and engines.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, 2202, and pursuant to the Lanham Act, 15 U.S.C. § 1121.

6. Upon information and belief, this Court has personal jurisdiction over Caterpillar because Caterpillar is a corporation organized and existing under the laws of the State of Delaware and because Caterpillar engages in regular and systematic business within the State of Delaware.

7. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### A.  Tigercat and its Valuable TIGERCAT Brand

8.  For decades, Tigercat and/or its subsidiaries and affiliates, have used the TIGERCAT mark in the United States in connection with premium quality forestry equipment and off-road industrial equipment.

9.  In or about 1992, a small group of professionals with extensive experience in all facets of the logging equipment industry teamed up with the Cambridge, Ontario-based fabrication company, MacDonald Steel, and launched Tigercat to design a technically superior alternative product to what was available in the market. Tigercat's original 726 feller buncher was quickly recognized as a more durable, more reliable machine capable of achieving greater production than competing machines. The 726 also proved to deliver a longer useful life with significantly higher uptime than competing machines.

10. From those origins, Tigercat, under its TIGERCAT brand, steadily continued its growth to become a leading marketer, manufacturer, and seller of forestry equipment and off-road industrial equipment. Tigercat, through its subsidiaries and affiliates, and its global network of dealers, sells its high-quality forestry equipment and off-road industrial equipment in countries and territories around the world.

11. Tigercat has prospered in the highly competitive forestry and off-road industrial equipment and machinery market by consistently offering innovative, high-quality products that are highly regarded by customers. As a customer-driven company with strong engineering capabilities, Tigercat thrives on the design and continuous improvement of its forestry equipment and off-road industrial equipment. Further, Tigercat has invested heavily in developing its TIGERCAT brand and marketing its products so that customers are able to recognize and trust the TIGERCAT brand in today's competitive marketplace.

12. Since its launch many years ago, the TIGERCAT brand has generated substantial revenues. Tigercat's premium quality forestry equipment and off-road industrial equipment have produced significant amounts in sales in the United States and in this jurisdiction, which are sold primarily through its unique dealer network.

13. Tigercat has invested, and continues to invest, significant resources in advertising and marketing support to build its TIGERCAT brand in the United States.

14. Tigercat uses a combination of trade and consumer promotions to market its TIGERCAT brand products. Tigercat uses trade advertising and promotion, including brochures, catalogs, and product literature, trade journals, and trade shows. Consumer advertising and sales promotions are also made via national and regional magazine advertising, the Internet, and social media.

15. Additionally, Tigercat uses the domain <www.tigercat.com>, and maintains a website for the TIGERCAT brand at such address. A full array of Tigercat's product line under the TIGERCAT brand, including forestry equipment and off-road industrial equipment, can be seen on the Tigercat website.

16. Tigercat owns several United States trademark registrations, including an incontestable trademark registration for TIGERCAT, Reg. No. 2,275,249, in connection with "specialized power-operated forestry equipment, namely, purpose built four wheel drive-to-tree and track type log bunchers, log loading machines, skidders and other forestry industry equipment, namely, bunching saws, bunching shears and component parts thereof," in International Class 07 (the "Incontestable TIGERCAT Mark"). Attached as Exhibit A is a true and correct copy of the registration certificate for Reg. No. 2,275,249, which was issued by the United States Patent and Trademark Office ("USPTO") on or about September 7, 1999.

17. Tigercat also owns several registrations for the TIGERCAT mark in various other jurisdictions around the world, including without limitation, Australia, Brazil, Canada, Chile, Russia, Germany, Sweden, and the United Kingdom. Tigercat has also applied to register the TIGERCAT mark in in various other jurisdictions around the world. For example, on or about August 26 2013, Tigercat filed an application for a Community Trade Mark in the European Union for TIGERCAT in International Class 07 in connection with "specifically specialised motorised equipment for the forest industry," (the "TIGERCAT CTM Application"). The TIGERCAT CTM Application was published on or about September 18, 2013.

18. Tigercat has used the TIGERCAT mark in commerce throughout the United States continuously since April 1, 1992 in connection with the design, development, manufacture, distribution, sale, marketing, advertising, and promotion of premium quality machinery and equipment in the forestry and logging industries. Tigercat machinery and equipment has also been used across various industries, including without limitation, the forestry, logging, pipeline, oil and gas, utilities, and construction industries.

19. Additionally, since at least as early as July 17, 2000, Tigercat, through its subsidiaries and affiliates and under its TIGERCAT brand, has been designing, developing, manufacturing, distributing, selling, marketing, advertising, and promoting off-road industrial vehicles, including skidders and purpose-built prime movers, carrying aerial devices, trencher mulchers, mulchers, and sprayers, across various industries, including without limitation, the forestry, logging, pipeline, oil and gas, utilities, and construction industries in the United States.

20. In connection with its use of the TIGERCAT mark in connection with off-road industrial vehicles, Tigercat filed Application Serial Number 85/814,584 with the USPTO on or about January 3, 2013 seeking to register the TIGERCAT mark in connection with, "Off road

industrial vehicles, namely, skidders and purpose-built prime movers, carrying aerial devices, mulchers and sprayers" in International Class 12 (hereinafter, the "TIGERCAT Application"). The TIGERCAT Application claims a date of first use in commerce of July 17, 2000.

21.     The trademark examining attorney searched the USPTO's database of registered and pending marks and found no conflicting marks that would bar registration of the TIGERCAT Application pursuant to 15 U.S.C. §1052(d).

22.     The TIGERCAT Application was published for opposition in the USPTO Trademark Official Gazette on or about July 23, 2013.

### B.     History Between Tigercat and Caterpillar

23.     Tigercat and Caterpillar have a long and well-established history and knowledge of one another and their respective products dating back to meetings between both companies in Peoria, Illinois in 1991, and continuing throughout the 1990's. Caterpillar was, of course, also knowledgeable about Tigercat's use of the TIGERCAT brand.

24.     Indeed, in the early 1990's, with Caterpillar's approval, Tigercat initially distributed its products under the TIGERCAT brand through various Caterpillar dealers. Caterpillar even acted as a dealer of Tigercat products during this period. Throughout the 1990's Caterpillar and Tigercat engaged in detailed joint venture discussions as well as acquisition discussions.

25.     Since 2000, both Tigercat and Caterpillar have been attending the same internationally recognized trade shows including CONEXPO, Tree Care Industry Expo and ICUEE. Tigercat has displayed its forestry equipment as well as its off-road industrial equipment at these trade shows since at least as early as March 2002.

26.     Tigercat and Caterpillar have been in the marketplace together with extensive knowledge of each other, each other's products and respective marks for more than twenty years.

For example, Tigercat has marketed and sold its off road industrial trencher mulcher in the United States for nearly thirteen years, and its aerial devices for nearly three years. Tigercat and Caterpillar have co-existed in the marketplace during these many years with no issue of consumer confusion as result of Tigercat's use of its TIGERCAT brand.

C.   **Existence Of An Actual Controversy Between Tigercat and Caterpillar**

27.   On or about February 25, 2013, through counsel, Caterpillar sent Tigercat a letter regarding the TIGERCAT trademark (the "February 2013 Letter"). Attached as Exhibit B is a true and correct copy of the February 2013 Letter.

28.   In the February 2013 Letter, Caterpillar stated that, "[t]o protect its rights in the CAT name and mark, Caterpillar has found it necessary at times to challenge third party uses and applications for marks likely to create confusion among consumers or otherwise dilute the distinctiveness of the CAT brand." More specifically, Caterpillar stated that Tigercat's "use [of] the TIGERCAT mark in the U.S. for off road industrial equipment," "is likely to mislead others into believing its activities are associated with or sponsored by Caterpillar." Further, Caterpillar stated that Tigercat's "use [of] the TIGERCAT mark in the U.S. for off road industrial equipment," "is also likely to dilute the distinctiveness of the well-known CAT brand." Caterpillar concluded the February 2013 Letter with a threat to oppose the TIGERCAT Application and "take steps to challenge [Tigercat's] use of the TIGERCAT mark."

29.   Following additional rounds of correspondence between the parties' counsel, Caterpillar filed a Notice of Opposition with the Trademark Trial and Appeal Board (the "TTAB") on or about November 20, 2013, launching Opposition No. 91213597 (hereinafter, referred to as the "TTAB Opposition").

30.   In the TTAB Opposition, Caterpillar has alleged that Tigercat's use and registration of the TIGERCAT mark is "likely, when applied to the identified products, to cause

- 7 -

confusion, mistake, or deception as to the origin, sponsorship, or approval of [Tigercat] and/or [Tigercat]'s goods by or with [Caterpillar] and/or its goods and services in violation of Section 2(d) of the Lanham Act, as amended, 15 U.S.C. § 1052(d)."

31. In the TTAB Opposition, Caterpillar has also alleged that "[Tigercat] mark so closely resembles [Caterpillar]'s previously used and registered CAT mark as to dilute or to be likely to cause dilution of the distinctive quality of [Caterpillar]'s famous CAT mark and name in violation of Section 43(c), 15 U.S.C. § 1125(c)."[1]

32. The TTAB Opposition has been contentious, and from Caterpillar's earliest communications, it has made it clear that the fight over Tigercat's pending trademark application is not the final chapter in the story. Indeed, in TTAB pleadings, Caterpillar has stated that it initiated the proceeding "out of concern for Tigercat's apparent expansion plans outside the forestry field." Any such concern, however, could not be resolved by opposing Tigercat's pending application; only successful federal trademark litigation could bar Tigercat's actual use of its TIGERCAT brand in the United States market. In the February 2013 Letter, as noted above, and at other various times, Caterpillar has threatened Tigercat by stating that Caterpillar intends to "take steps" to challenge the Tigercat's actual use of the TIGERCAT mark in the United States market and beyond.

33. The parties have thus vigorously disputed the issue of whether Tigercat's long-standing use and registration of the TIGERCAT mark in the United States for forestry equipment and off-road industrial equipment infringes Caterpillar's trademark rights by virtue of causing consumer confusion or dilution of the Caterpillar Registered Marks.

---

[1] In the TTAB Opposition, Caterpillar pleaded the following seventeen federal trademark Registration Numbers: 0079056; 0277417; 0345499; 0564272; 0770639; 0777703; 0778638; 0871146; 0984444; 0985439; 1023137; 1579437; 2140606; 2364591; 2364592; 2421077; and 4193027 (collectively referred to as the "Caterpillar Registered Marks").

- 9 -

34. There is no likelihood that any relevant consumers would be confused, mistaken, or deceived into believing that Tigercat is affiliated, connected, or otherwise associated with Caterpillar, or that Caterpillar is sponsoring or has otherwise approved of Tigercat's goods and services as a result of Tigercat's use or registration of the TIGERCAT mark.

35. Despite years of co-existence with Tigercat, Caterpillar has no evidence of actual consumer confusion caused by Tigercat's use and registration of the TIGERCAT mark.

36. However, Caterpillar's threats to prevent Tigercat from using its longstanding TIGERCAT brand is not limited to the TTAB Opposition: Caterpillar also launched a coordinated attack on Tigercat's global trademarks, alleging trademark-related claims in various jurisdictions around the world.

37. For example, after years of coexistence in Europe, Caterpillar initiated, on or about December 17, 2013, an opposition procedure against the TIGERCAT CTM Application, which is currently still pending, before the European Union Intellectual Property Office ("EUIPO"). In connection with that opposition procedure, Caterpillar has claimed that a risk of confusion exists between the two signs and that the "Tigercat" trademark takes unfair advantage of, or is detrimental to, the distinctive character or the reputation of the "CAT" trademarks.

38. Caterpillar has also launched various opposition and cancellation actions against Tigercat's trademark registrations throughout Europe (including in Sweden, Germany, Finland, and United Kingdom). Other than the Finland proceeding, these proceedings are currently pending.

39. Caterpillar also commenced a trademark infringement proceeding in Belgium against Tigercat's authorized dealer and distributor, Clohse Group Lux, alleging that a risk of confusion exists between the TIGERCAT and CAT marks and that the TIGERCAT mark takes

unfair advantage of, or is detrimental to, the distinctive character or the reputation of the CAT marks.

40. Based on all of the foregoing facts, and under all of the circumstances, there is at present an actual substantial controversy of sufficient immediacy and reality between Tigercat and Caterpillar that threatens to seriously damage and impair Tigercat, and its subsidiaries and affiliates, warranting the grant of declaratory relief from the Court.

## COUNT I
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

41. Tigercat repeats and realleges paragraphs 1 through 40 hereof, as if fully set forth herein.

42. Caterpillar has claimed that Tigercat's use and registration of the TIGERCAT mark infringes Caterpillar's trademark rights by causing consumer confusion or dilution of the Caterpillar Registered Marks, and has demanded that Tigercat cease use of its TIGERCAT mark and abandon its TIGERCAT Application.

43. As a result of the acts described in the preceding paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

44. There is no likelihood that any relevant consumers would be confused, mistaken, or deceived into believing that Tigercat is affiliated, connected, or otherwise associated with Caterpillar, or that Caterpillar is sponsoring or has otherwise approved of Tigercat's goods and services as a result of Tigercat's use or registration of the TIGERCAT mark.

45. The differences between the parties' trademarks and use prevent any likelihood of confusion, including without limitation the dissimilarities as to appearance, sound, meaning, and commercial impression of the parties' respective marks.

46. The parties' respective customers are sophisticated and exercise a high degree of care, further preventing any likelihood of confusion.

47. Despite at least 20 years of coexistence, there has been no actual confusion caused by Tigercat's trademark or trade name.

48. A judicial declaration is necessary and appropriate so that Tigercat may ascertain its rights regarding continued use of its valuable TIGERCAT brand and its pending TIGERCAT Application.

49. Therefore, Tigercat is entitled to a declaratory judgment that Tigercat has not infringed and does not infringe, either directly or indirectly, any of Caterpillar's valid and enforceable trademark rights under 15 U.S.C. § 1051 *et seq*.

## COUNT II
## (DECLARATORY JUDGMENT OF NON-DILUTION)

50. Tigercat repeats and incorporates by reference paragraphs 1 through 49 hereof, as if fully set forth herein.

51. Caterpillar has claimed that Tigercat's use and registration of the TIGERCAT mark dilutes the distinctiveness of Caterpillar's trademark rights, including the Caterpillar Registered Marks. Because of Caterpillar's actions, there is a substantial controversy between the parties of sufficient immediacy and reality to warrant the issue of a declaratory judgment.

52. Caterpillar's asserted marks are not sufficiently famous to the general consuming public to qualify for protection under the federal trademark dilution statute.

53. There is no likelihood that Tigercat's use and registration of the TIGERCAT mark would cause any dilution of the distinctiveness of Caterpillar's trademarks. Tigercat's use and registration of the TIGERCAT mark has not and does not, directly or indirectly, blur or disparage Caterpillar's trademarks.

54. Caterpillar has no evidence of actual dilution caused by Tigercat's use and registration of the TIGERCAT mark.

55. Tigercat therefore requests that the Court declare that Tigercat's use and registration of the TIGERCAT mark neither dilute Caterpillar's trademarks nor violate 15 § U.S.C. 1125(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Tigercat requests judgment against Caterpillar as follows:

A. Declaring that Tigercat has not infringed and is not infringing, either directly or indirectly, any of Caterpillar's valid and enforceable trademark rights, in violation of 15 U.S.C. § 1051 *et seq*;

B. Declaring that there is no likelihood that any relevant consumers would be confused, mistaken, or deceived into believing that Tigercat is affiliated, connected, or otherwise associated with Caterpillar, or that Caterpillar is sponsoring or has otherwise approved of Tigercat's goods and services as a result of Tigercat's use or registration of the TIGERCAT mark;

C. Declaring that Tigercat has not diluted and is not diluting, either directly or indirectly, any of Caterpillar's valid and enforceable trademarks, in violation of 15 § U.S.C. 1125(c);

D. An award by the Court to Tigercat of its reasonable attorneys' fees and costs in this case pursuant to 15 § U.S.C. 1117; and

E. An award by the Court to Tigercat of any other relief that the Court considers just and proper.

- 13 -

## DEMAND FOR A JURY TRIAL

Tigercat hereby demands a trial by jury on all issues and claims so triable.

Dated: November 11, 2016

**Of Counsel**:

Francis W. Ryan
Tamar Y. Duvdevani
Marc E. Miller
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4500 (Phone)
(212) 335-4501 (Fax)

Gina L. Durham
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
(415) 836-2500 (Phone)
(415) 836-2501 (Fax)

**DLA PIPER LLP (US)**

*/s/ Denise S. Kraft*
Denise S. Kraft (I.D. No. 2778)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Phone: (302) 468-5700
Fax: (302) 394-2341

*Attorneys for Plaintiff Tigercat International Inc. and Tigercat Industries Corp.*

EAST\136737017.1