IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIGERCAT INTERNATIONAL, INC., TIGERCAT INDUSTRIES CORP.<br><br>Plaintiffs,<br><br>v.<br><br>CATERPILLAR INC.,<br><br>Defendant. | Civil Action No. 16-cv-1047-GMS |

## **MEMORANDUM**

### I. **INTRODUCTION**

The plaintiffs, Tigercat International Inc. and Tigercat Industries Corp. ("Tigercat"), filed this action for declaratory judgment of non-infringement and non-dilution, arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* against defendant Caterpillar Inc. ("Caterpillar") on November 11, 2016. (D.I. 1.)

Caterpillar moved to stay this action on November 23, 2016 pending the administrative proceeding before the Trademark Trial and Appeal Board ("TTAB"). (D.I. 6.) On December 8, 2016, Caterpillar moved for discretionary dismissal of this action. (D.I. 11.) Both motions are currently pending before the court, and, for the reasons that follow, the court will grant Caterpillar's Motion to Stay and deny Caterpillar's Motion for Discretionary Dismissal as moot.

## II. BACKGROUND

On January 3, 2013, Tigercat applied to register the mark TIGERCAT (Application No. 85814584) at the U.S. Patent and Trademark Office (the "PTO") based on Tigercat's use of the mark in commerce. (D.I. 7 at 2.) Tigercat, who previously registered the TIGERCAT mark for use in the forestry field,[1] sought a second registration with no designated field-of-use restriction. (D.I. 7 at 2.) On February 25, 2013, Caterpillar sent Tigercat a notice letter warning Tigercat that if it did not withdraw its pending registration application, Caterpillar would seek to "oppose [Tigercat's] application and take steps to challenge [Tigercat's] mark." (D.I. 1, Ex. B at 3.) After receiving the notice letter, Tigercat did not acquiesce to Caterpillar's demands. Consequently, on November 20, 2013, Caterpillar began its opposition before the TTAB. (D.I. 7 at 2.) The focus of Caterpillar's opposition proceedings was that, with no field-of-use restriction, Tigercat's mark would cause confusion with and would likely dilute Caterpillar's prior registered CAT and CATERPILLAR marks that are used in connection with industrial vehicles, construction equipment, and related products and services. (D.I. 7 at 2.)

The TTAB opposition has been extensive and long-lasting. Over the course of three years the parties have engaged in discovery proceedings before the TTAB and have "collectively serv[ed] 106 interrogatories, 172 document requests, and 332 requests for admission, and produc[ed] over 35,000 pages of documents. The parties have taken a total of 22 depositions, including seven expert depositions and three third-party depositions." (D.I. 7 at 2.) Further, the parties have produced consumer surveys on the issue of likelihood-of-confusion and expert advice

---

[1] Caterpillar does not oppose Tigercat's first registration of the TIGERCAT mark for use in the forestry field. (D.I. 17 at 9.)

2

from linguists on the issue of trademark similarity. (D.I. 7 at 2-3.) Discovery and procedural disputes between the parties during the opposition proceedings required intervention by the TTAB and two Federal District Court Judges from the Eastern District of Pennsylvania and the Western District of Arkansas. (D.I. 12 at 3, 7 n.2); (D.I. 13 at 4.) As a result of these discovery and procedural disputes, the TTAB extended the discovery and trial dates seven times to its last scheduled date of January 20, 2017. (D.I. 13 at 4); (D.I. 14 at ¶ 8.)

Caterpillar also initiated international opposition proceedings against Tigercat after initiating its TTAB opposition. First, in September of 2015, Caterpillar filed an infringement action against Tigercat's Belgian dealer. (D.I. 14 at ¶2.) Then, between February and March of 2016, Caterpillar filed: (1) revocation actions against Tigercat in Sweden, Germany, and Finland; (2) an opposition action against Tigercat's trademark registration application in New Zealand; and (3) a cancellation action against Tigercat in the UK. (D.I. 14 at ¶¶ 3-7.)

On November 11, 2016, Tigercat filed the instant action seeking declaratory judgment of non-infringement and non-dilution. (D.I. 1 at ¶1.) Discovery was scheduled to close in the TTAB proceeding on November 21, 2016 and the trial period was to begin on January 20, 2017.[2] (D.I. 12 at 3.) On November 23, 2016, Caterpillar filed a Motion to Stay the Declaratory Judgment Action to allow the TTAB proceeding to continue. (D.I. 6.) On December 8, 2016, Caterpillar filed a Motion to Dismiss upon Discretionary Dismissal urging that the court not exercise jurisdiction over Tigercat's claims. (D.I. 11.)

As a result of the filing of a civil action, the TTAB proceeding was suspended on January

---

[2] Because the trial period had not begun at the time this suit was filed, the parties have not yet litigated the issues of likelihood of confusion or dilution before the TTAB. (D.I. 13 at 5.)

3

5, 2017 upon a motion by Tigercat. (D.I. 24, Ex. B.) "It is the policy of the Board to suspend proceedings when the parties are involved in a civil action which may be dispositive of or have a bearing on the Board case." (D.I. 24, Ex. B at 2.) Because the claims in the civil action are related to the claims of likelihood-of-confusion and dilution in the TTAB proceeding, the TTAB determined that the "civil action will have direct impact on the opposition proceeding." (D.I. 24, Ex. B at 1, 3.) Moreover, although the TTAB suspended the proceedings "pending final disposition of the civil action," should the court grant Caterpillar's Motion to Stay, "the Board should be so notified, and the proceedings [before the TTAB] will resume." (D.I. 24, Ex. B at 1, 4.)

## III. STANDARD OF REVIEW

A decision to stay litigation lies within the sound discretion of the court and represents an exercise of the court's inherent power to conserve judicial resources by controlling its own docket in the interests of the efficient and fair resolution of disputed issues. *See Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3rd Cir. 1967); *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *1 (D. Del. July 2, 2013). The power to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS, 2012 WL 5599338, at *3 (D. Del. Nov. 15, 2012). The party seeking a stay must demonstrate "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Landis*, 299 U.S. at 254-55. Thus, to determine whether to stay a litigation, the court should consider: (1) judicial efficiency as measured by the stage of

4

the civil litigation and the stay's potential to simplify the issues; (2) harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and (3) the hardship and inequity to the moving party if the stay is denied.[3] *See id.; Anstalt v. Bacardi & Co.*, No. 16-6411-GHK, 2016 WL 7635955, at *2 (C.D. Cal. Nov. 16, 2016); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-1107-GMS, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014); *Exclusive Supplements, Inc. v. Abdelgawad*, No. 12-1652-CB, 2013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013).

## IV. DISCUSSION

### A. Judicial Efficiency

#### i. *The Instant Action is in the Early Stages of Litigation*

First, the court should consider whether the litigation is in its early stages. *Bonutti*, 2014 WL 1369721, at *7. Caterpillar argues that the interests of judicial efficiency will be best served by the grant of a stay because the instant case is in "its earliest possible stages." (D.I. 7 at 11-12.) The court agrees.

---

[3] As a preliminary matter, Caterpillar argues that the court should adopt the test applied district courts when determining whether a stay in a patent action is appropriate after the Patent Trial and Appeal Board ("PTAB") institutes *Inter Partes Review* ("*IPR*"). (D.I. 7 at 6); *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-1107-GMS, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014) (determining that the factors used to evaluate the appropriateness of a stay when the PTAB institutes *IPR* is "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and [a] trial date has been set" ) (quoting *Bayer Intellectual Prop. GMBH v. Warner Chilcott Co., LLC*, No. 12-1032-GMS, 2013 WL 6503456, at *1 (D. Del. Dec. 9, 2013)). In contrast, Tigercat urges the court not to use the patent law standard because the results of the two proceedings have different effects on the related civil litigation. (D.I. 13 at 9.) For example, whereas *IPR* proceedings have the potential to moot the district court litigation while outcome of trademark registration proceedings do not, without review by a district court, have the same effect on future litigation. (D.I. 13 at 8.) Tigercat argues that because of those differences, stays are often granted in favor of *IPR* proceedings and rarely granted in favor of TTAB proceedings. (*Id.*)

It is true that when a court determines that awaiting the outcome of an administrative proceeding is the primary reason for instituting a stay, there are different considerations that apply in patent versus trademark actions. Regardless of their differences, the court retains the inherent power to stay either type of litigation upon weighing the competing interests of the parties and balancing such interests. *Landis*, 299 U.S. at 254-55.

Here, Tigercat filed its Complaint nearly eighteen months ago. (D.I. 1.) Since then, Caterpillar has filed a Motion to Dismiss and a Motion to Stay, both of which Tigercat opposed. (D.I. 7, 12, 13, 17, 20, 22.) The parties then engaged in five mediation teleconferences with a District of Delaware magistrate judge. Following their unsuccessful attempts at mediation, the parties submitted a contentious Joint Status Report in anticipation of a Rule 16 Scheduling Conference with the court. (D.I. 34.) Discovery has been minimal as Caterpillar has only served Tigercat with its responses to Tigercat's first set of requests for production and interrogatories on April 9, 2018. (D.I. 35.) Therefore, that this action is in its early stages weighs in favor of granting Caterpillar's Motion to Stay.

  *ii. A Stay will Simplify the Issues.*

Next, the court must determine if a stay will promote an efficient course of litigation by simplifying the issues. *Bonutti*, 2014 WL 1369721, at *5. Tigercat argues that, contrary to Caterpillar's assertions, judicial efficiency will be best served by denying the stay and allowing the civil litigation to move forward because "it places the dispute before the body that can decide all of the issues." (D.I. 13 at 18.)

First, Tigercat claims that Caterpillar improperly relies on the primary jurisdiction doctrine[4] to support its request for a stay pending the TTAB's ruling. (D.I. 13 at 17.) The primary jurisdiction doctrine, Tigercat argues, should not be invoked "when issues before the district court are well

---

[4]  The primary jurisdiction doctrine, similar to an exhaustion of administrative remedies requirement, was created to promote "proper relationships between the court and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63, 77 (1956). The doctrine applies where a claim that is originally cognizable in the courts is placed within the competence of an administrative body such that the judicial process should be suspended to await the outcome of the administrative body's proceeding for its views before the judicial consideration of the legal claim. *Id.*; *see also See Goya Foods, Inc., v. Tropicana Products, Inc.*, 846 F.2d 848, 851 (2d Cir. 1988).

6

within the conventional experience of federal district courts, and the TTAB has no unique expertise or experience." (D.I. 13 at 17); *see Goya Foods,* 846 F.2d at 851 (internal quotations omitted) (finding that primary jurisdiction arises "only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency."). Tigercat argues that issues of registration do not require the unique expertise and experience of the TTAB. Thus, it argues that resorting to the doctrine of primary jurisdiction to institute a stay would be inappropriate. (D.I. 13 at 17.)

The court agrees that it is well equipped to decide the issues of likelihood-of-confusion and dilution. *See e.g., Goya,* 846 F.2d at 853 ("Likelihood of consumer confusion, which is relevant to the registration determination under 15 U.S.C. § 1052(d), is a legal standard with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition."). Hence, the court will not rely on the doctrine of primary jurisdiction in making its decision in this case. Instead, the court will focus its attention on efficiency. *See Rhoades v. Avon Prod., Inc.,* 504 F.3d 1151, 1165 (9th Cir. 2007) ("The deciding factor should be efficiency; the district court should exercise jurisdiction if this court is more efficient; otherwise, not."). "[D]istrict courts should defer to . . . [the] TTAB in cases where that would be the more efficient course of action." *Id.* at 1164 n.13; *see also PHC, Inc. v. Pioneer Healthcare, Inc.,* 75 F.3d 75, 80-81 (1st Cir. 1996) (holding that an infringement claim that addresses the validity of a mark should be heard despite the pendency of a Board proceeding "if this course is more efficient; otherwise, not"); *Goya,* 846 F.2d at 854 (finding that while awaiting the PTO's determination may assist the district court in deciding issues of non-

7

infringement, efficiency requires the court to resolve all of plaintiff's issues related to infringement and validity if the registration decision rested on grounds relevant to the non-infringement claim claim).

Next, Tigercat contends that awaiting the outcome of the TTAB proceeding would be futile because (1) the issues before the court and the TTAB are different and (2) unlike a ruling by the TTAB, a declaratory judgment from the court will settle the entire controversy between the parties. (D.I. 13 at 14, 18.) Caterpillar, on the other hand, argues that because of the similarity of the issues before the court and the TTAB and because of the advanced stages of the TTAB opposition proceedings, a stay of the civil action with undoubtedly simplify the issues. (D.I. 7 at 7.) The court agrees with Caterpillar that a TTAB decision will aid the parties in narrowing their contentions and the court in rendering its decision on the issues of likelihood-of-confusion and dilution that are essential to Tigercat's only two claims before the court.

Two issues were pending before the TTAB prior to the initiation of the instant action. First, as noted, Caterpillar requested that the TTAB deny Tigercat's application to register the TIGERCAT mark without a field-of-use limitation. (D.I. 7 at 2.) Caterpillar argues that there could be likelihood-of-confusion between Caterpillar's and Tigercat's marks and possible dilution of Caterpillar's marks. (*Id.*) These claims are central to the instant case as Tigercat has requested a declaration from the court on only two issues: non-infringement and non-dilution. (D.I. 1 at ¶¶ 41-55.) Tigercat's non-infringement claim is premised on the notion that consumers are not likely to be confused by the similarity between the parties' marks. (D.I. 1 at ¶ 44.) The standard for infringement in the district court is the same as the standard used for registration. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1306 (2015) ("[T]he same likelihood-of-

confusion standard applies to both registration and infringement."). Accordingly, the decision on likelihood-of-confusion may also have a preclusive effect after the parties have engaged in the review and appeals process following a TTAB decision. *See id.* at 1310 (finding that the TTAB's ruling on likelihood-of-confusion in registration proceeding is entitled to preclusive effect in a subsequent infringement action "[s]o long as the other ordinary elements of issue preclusion are met").

Even absent a preclusive effect, courts look to the TTAB for its analysis on both the issues of likelihood-of-confusion and dilution as highly instructive and persuasive. *See Goya*, 846 F.2d at 854 (concluding that although the outcome of a PTO registration proceeding will not affect the legal standard applied by the court, "awaiting the PTO's registration decision would allow the District Court to enlist the PTO's reasoning and even its results in support of its own conclusions, assuming the registration decision rested on grounds relevant to the infringement claim"); *see also Anstalt*, 2016 WL 7635955, at *3 ("At a minimum, TTAB's ruling on the likelihood-of-confusion issue will be highly persuasive authority. It might even have preclusive effect."). Therefore, the TTAB proceeding has the potential to moot Tigercat's principal claim of non-infringement. As such, a ruling by the TTAB could simplify the issues for the parties and the court.

Further, the history of these parties before the TTAB suggests that a stay of this case would be the most efficient course of action. The TTAB proceeding has been pending for three years and was nearing completion at the time Tigercat filed its Complaint. (D.I. 7 at 2-3.) As noted above, discovery before the TTAB was extensive: consisting of 106 interrogatories, 172 document requests, 332 requests for admission, the production of 35,000 pages of documents, and 22 depositions. (D.I. 7 at 2.) In addition, the parties enlisted the help of the TTAB and two district

9

*Anstalt*, 2016 WL 7635955, at *3 ("At a minimum, TTAB's ruling on the likelihood-of-confusion issue will be highly persuasive authority. It might even have preclusive effect."). Therefore, the TTAB proceeding has the potential to moot Tigercat's principal claim of non-infringement. As such, a ruling by the TTAB could simplify the issues for the parties and the court.

Further, the history of these parties before the TTAB suggests that a stay of this case would be the most efficient course of action. The TTAB proceeding has been pending for three years and was nearing completion at the time Tigercat filed its Complaint. (D.I. 7 at 2-3.) As noted above, discovery before the TTAB was extensive: consisting of 106 interrogatories, 172 document requests, 332 requests for admission, the production of 35,000 pages of documents, and 22 depositions. (D.I. 7 at 2.) In addition, the parties enlisted the help of the TTAB and two district court judges to resolve deposition witness disputes. (D.I. 12 at 7 n. 2); (D.I. 13 at 4.) This litigation activity resulted in seven extensions of the trial date to its last scheduled date of January 20, 2017. (D.I. 7 at 1); (D.I. 13 at 4). Tigercat then filed this civil suit on November 11, 2016, ten days before the close of the discovery period and two months before the last scheduled trial date. (D.I. 7 at 2-3.) Given these considerations, resetting the clock at this stage of the proceedings strikes the court as a monumental waste of time, money, and effort. Therefore, the interests of judicial efficiency support a stay of the instant litigation pending the outcome of the TTAB proceeding.

B. <u>Tigercat will not be Harmed or Prejudiced by a Stay.</u>

The court must next consider the possible damage to the non-moving party that may result from the grant of a stay. *See Bonutti*, 2014 WL 1369721, at *2; *see also Landis*, 299 U.S. at 254-55. Tigercat alleges that "Caterpillar's threats of infringement have cast an ominous cloud over Tigercat's long-standing use of its TIGERCAT mark." (D.I. 13 at 19.) The "cloud,"

10

Tigercat argues, "threatens to seriously damage and impair Tigercat and its business." (*Id.* at 20.) Tigercat insists that a stay will only "perpetuate this cloud" over its mark by delaying the court's prompt determination of its rights. (*Id.* at 20.)

The court finds Tigercat's arguments unpersuasive. First, Tigercat has offered no evidence whatsoever of how the so-called "cloud" has effected[5] or will affect its business. Tigercat has also failed to present the court with any explanation of the actual damage it would face upon the grant of a stay. Indeed, Tigercat, in its briefing to the court, only offers unsupported conclusory statements that it will suffer harm in the face of a stay. *See* (D.I. 13 at 20) ("A stay of this action would perpetuate this [ominous] cloud, which threatens to seriously damage and impair Tigercat and its business.") Tigercat's assertions of damage to its business simply do not hold up.

Tigercat was alerted that Caterpillar was going to enforce its rights in its marks on several occasions, the first of which being when Tigercat received Caterpillar's notice-letter on February 25, 2013. (D.I. 1, Ex. B at 3.) Presumably, at that point, the so-called "cloud" began to cast its pall over Tigercat's brand and for three years Tigercat seemed unconcerned. Indeed, during the pendency of the opposition proceedings before the TTAB Tigercat filed infringement, opposition, and cancelation actions against Tigercat in Belgium, Sweden, New Zealand, Germany, the United Kingdom, and Finland. (D.I. 14 at ¶¶ 2-7.) Though these actions have no bearing on a decision in the United States proceedings,[6] Tigercat was further made aware that Caterpillar was going to

---

[5]  The dispute between the parties has been on-going for nearly five years—three years before the TTAB and eighteen months before the court—yet Tigercat has still provided no evidence to support their argument.

[6]  *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 714 (3d Cir. 2004) ("Trademark standards do not traverse international borders."); *see also Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (finding it "error to admit evidence of the parties' foreign trademark practices"); *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985) (district court erred in considering status of parties' marks in France; "Our concern must be the business and goodwill attached to United States trademarks, not French trademark rights under French law.") (quotation omitted); *Vanity Fair Mills v. T. Eaton Co.*,

11

a trial of all the issues.") (citing *Gillette Co. v. Ed Pinaud, Inc.*, 178 F.Supp. 618, 622 (S.D.N.Y.1959)); *see also Anstalt*, 2016 WL 7635955, at *4 ("By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action.") (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)). Thus, the court finds that Tigercat has not shown that it will suffer harm or prejudice as a result of a stay.

C. Inequity will Result if the Stay is Not Granted.

Finally, the movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

Caterpillar does not argue that it will suffer hardship if the court does not grant a stay. Instead, Caterpillar argues that the court should stay the action because it invested significant time and resources in opposing Tigercat's registration before the TTAB. (D.I. 7 at 13.) Specifically, Caterpillar claims that Tigercat, by filing the instant action, sought to "pull the plug at such an advanced stage of the TTAB proceeding" that involves similar issues and that Tigercat's actions will result in needless duplication of effort. (D.I. 7 at 3.) Further, Caterpillar argues that any delay Tigercat would face as a result of the stay was of "its own creation" because "the time to file a declaratory judgment action was three years ago." (D.I. 17 at 9.)

It is likely true that delay serves neither party's interests. On the one hand, Caterpillar will be forced to divert its resources to defend itself in a declaratory judgment action after enduring years of litigation before the TTAB on similar issues. Tigercat, on the other hand, will not receive a binding and prompt declaration of its rights in its mark to which it is entitled. *See Rhoades*, 504 F.3d at 1164 ("[W]here as here, there is a potential infringement lawsuit, federal courts are

12

Caterpillar claims that Tigercat, by filing the instant action, sought to "pull the plug at such an advanced stage of the TTAB proceeding" that involves similar issues and that Tigercat's actions will result in needless duplication of effort. (D.I. 7 at 3.) Further, Caterpillar argues that any delay Tigercat would face as a result of the stay was of "its own creation" because "the time to file a declaratory judgment action was three years ago." (D.I. 17 at 9.)

It is likely true that delay serves neither party's interests. On the one hand, Caterpillar will be forced to divert its resources to defend itself in a declaratory judgment action after enduring years of litigation before the TTAB on similar issues. Tigercat, on the other hand, will not receive a binding and prompt declaration of its rights in its mark to which it is entitled. *See Rhoades*, 504 F.3d at 1164 ("[W]here as here, there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages."); *Goya*, 846 F.2d at 854 ("Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights.").

While the court recognizes that delayed relief that will result from a stay will cause at least some prejudice to Tigercat, the court finds that, on this factor, the scales tip more in favor of Caterpillar. In sum, the court finds it unacceptable that Tigercat decided to invoke the power of the court only ten days before the close of three-years of contentious discovery and two months before the start of trial before the TTAB. Tigercat's decision to remain dormant and sit on its rights for such a lengthy period of time without offering the court any explanation as to why is, quite frankly, unacceptable. Likewise, given the effect of filing this action—that Tigercat gets to

13

joint notice, the parties shall set forth their positions on whether the stay should be lifted, or whether it should remain in effect pending the resolution of any appeal.

Dated: May 2, 2018

_____
UNITED STATES DISTRICT JUDGE